OPINION OF THE COURT
Richard Lee Price, J.
Upon the court’s own motion, the prior decision herein, dated October 20, 1981, is recalled and, upon reconsideration, plaintiff’s application for the entry of judgment herein pursuant to the provisions of CPLR 3215 is disposed of to the extent hereinafter indicated.
It appears that a guardian ad litem was appointed to represent the defendant herein based upon the affidavit of one of plaintiff’s staff physicians attesting that, in his opinion, defendant was incapable of managing his financial affairs or of adequately defending his rights in connection with this action.
From the papers here submitted, including the guardian’s report, it appears that defendant was admitted to the Goldwater Memorial Hospital, operated and maintained by the plaintiff, on April 25,1978, and was treated for third degree burns of the chest and an ulcerous back condition. He is now 77 years of age and is also afflicted with an osteoarthritic condition which confines him to a wheelchair. It further appears that he has no family and no *34 known income, and that his only known asset is a savings bank account aggregating approximately $45,000. According to the affidavit of plaintiff’s assistant comptroller, an application for Medicaid benefits was submitted by plaintiff on defendant’s behalf to the Department of Social Services, but the latter declared him ineligible therefor because of the existence of the afore-mentioned account balance. The complaint, however, seeks recovery of the sum of $112,280, far in excess of such balance, for hospital and medical services rendered to defendant at plaintiff’s facility.
The fundamental purpose of the Medicaid law is set forth in section 363 of the Social Services Law as follows: “Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare and for promoting the state’s goal of making available to everyone, regardless of * * * economic standing, uniform, high-quality medical care.” The achievement of that purpose clearly requires the cooperative effort, in each instance, of the hospital, the patient, and the Department of Social Services, and would, moreover, appear to be wholly incompatible with any direct liability on the part of any recipient of hospital or medical services who is in fact eligible to receive medical assistance benefits under such law. (See Amsterdam Mem. Hosp. v Cintron, 52 AD2d 404; Mount Sinai Hosp. v Kornegay, 75 Misc 2d 302.)
As was aptly observed by Justice (then Judge) Sandler in the case last cited (Mount Sinai Hosp. v Kornegay, supra, p 304), the hospital has: “the duty to ascertain the possible eligibility of the patient or family, give adequate directions and information, and maintain a sufficient continuing interest to insure that eligible patients or family file the required applications and that appropriate action is taken. These responsibilities follow inexorably from the obvious reality that specialized hospital personnel are almost certain to be far more knowledgeable about the legal requirements than the average patient and also to have an on-going relationship with the department that permits ready correction of misunderstandings or points of confusion.”
*35 The words just quoted must be held to apply with even greater force where, as here, the hospital in question is a public hospital designed primarily for the care and treatment of the indigent poor (see Goldwater v Citizens Cas. Co. of N. Y., 7 NYS2d 242, affd 36 NYS2d 413; see, also, New York City Charter, former § 1714), and the party seeking recovery is a public benefit corporation charged by law with the duty of operating, managing and maintaining such institution for the benefit of all of the people of the State and City of New York (see New York City Health and Hospitals Corporation Act, L 1969, ch 1016, §§ 2, 5).
In light of the foregoing authorities and others (see Brooklyn Hosp. v Criss, 76 Misc 2d 119; Mount Sinai Hosp. v Brinn, 73 Misc 2d 1; Shaw v Tait, 106 Misc 2d 292), it seems clear that, in the indicated circumstances, plaintiff’s responsibility to assist defendant in securing Medicaid benefits did not come to an end simply by reason of its receipt from the department of a notice declaring him ineligible because of the size of his savings account balance. At the very minimum, when its charges began to exceed defendant’s known nonexempt resources (i.e., $45,000 less the $500 burial reserve and $1,550 in savings exempted from consideration in determining eligibility by the provisions of section 366 [subd 2, par (a), els (3), (8)] of the Social Services Law effective during 1978), it had a duty to apply to the department on defendant’s behalf for reconsideration of his eligibility. Had it done so, it seems likely that, at the very least, defendant would have qualified for benefits under the provisions of section 366 (subd 2, par [c]) of the Social Services Law and the regulations promulgated by the department in connection therewith (i.e., 18 NYCRR 360.31), known as the “catastrophic illness” provisions.
Accordingly, in the interests of justice, the judgment to be entered herein shall be limited to the sum of $42,950, without costs, and interest shall be computed from the tenth day after the rendition by plaintiff of a bill including charges in said amount. Said judgment shall also include a provision for an award of compensation to the guardian for the legal services performed by him to be paid by plaintiff out of the first moneys collected thereon. The amount of *36 such compensation will be fixed by the court upon the submission of such judgment.
The guardian’s recommendation that a conservator of defendant’s property be appointed is rejected. It is apparent that, after satisfaction of the judgment to be entered herein, defendant’s assets will be minimal and clearly insufficient to warrant the expense of a conservatorship to attempt to preserve them (see Matter of Stane v Dery, 86 Misc 2d 416).