717 F.Supp. 1039 (1989)
Stephen WEAVER, by his Next Friend Rosalie WEAVER, Plaintiff,
v.
NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, the City of New York, Harold E. Herkommer, personally and as Executive Director, New York City Employees' Retirement System, and Milad S. Eskalis, personally and as Assistant Deputy Director, New York City Employees' Retirement System, Defendants.
No. 88 Civ. 2662 (MBM).
United States District Court, S.D. New York.
July 21, 1989.
*1040 *1041 Jonathan A. Weiss, Legal Services for the Elderly, New York City, for plaintiff.
Susan Rockford, Anne Carson and Peter L. Zimroth, Corp. Counsel of the City of New York, New York City, for defendants.

OPINION AND ORDER
MUKASEY, District Judge.
Plaintiff Stephen Weaver was a retired New York City employee who received a pension from defendant New York City Employees' Retirement System ("NYCERS"). Plaintiff died on December 29, 1988. This action, styled a § 1983 claim,[1] has been brought by his niece Rosalie Weaver, suing as his next friend, to challenge an alleged NYCERS policy of cutting off payments to a pensioner perceived to be incompetent until a committee or conservator is appointed. In the spring of 1988, NYCERS terminated plaintiff's pension checks after it determined that plaintiff *1042 was incompetent. Plaintiff claims that the practice of terminating benefits of incompetent claimants is arbitrary and therefore a violation of substantive due process under the Fourteenth Amendment; plaintiff asserts also that defendants did not afford him notice and a hearing regarding this termination, and shifted the burden to him to prove that he was not incompetent, thus violating his procedural due process rights under the Fourteenth Amendment. Plaintiff seeks compensatory damages plus interest from NYCERS. Plaintiff's prayer for injunctive relief is conceded by both sides to be moot because he is dead. Plaintiff requests punitive damages from the individual defendants.
Defendants Milad Eskalis, NYCERS Assistant Deputy Director, and Harold Herkommer, NYCERS Executive Director, now move for summary judgment claiming that they are protected by the doctrine of qualified immunity.[2]
Plaintiff, a pensioner since 1970, received his pension benefit payments monthly through February 1988. By form letter dated October 6, 1987, defendant Eskalis notified Rosalie Weaver, plaintiff's niece, that NYCERS suspected that Stephen Weaver was incompetent and, accordingly, all payments would be suspended until, inter alia, a conservator or committee was appointed. In order to give the reader the full flavor of this document, which defendants assert constitutes adequate notice apprising plaintiff of an opportunity to be heard, I reprint it in full (handwritten portions are underlined):
 Date: 10/6/87
 Rosalie Weaver
 1 Haven Plaza apt 22B
 New York York
 Re: Stephen Weaver
 Pension No. 072234
Dear
This is in response to the visit conducted by our Hooper Holmes, Inc. investigator. He reported that "the pensioner cannot understand him or sign any papers. Also the niece stated Steven Weaver is incompetent."
This is sufficient to raise the issue of whether or not [blank] is legally competent to manage his/her affairs. His/Her observation could be negated by a certification of a medically qualified psychiatrist. If he/she is not competent, a Conservator appointed by a Court of competent jurisdiction would be necessary to act on his/her behalf.
Should he/she be declared judicially incompetent the appointment of a Committee becomes necessary instead of Conservator.
Accordingly, all checks will be suspended after 90 days from the date of this letter unless the appointment of a Conservator or Committee or in the alternative, a psychiatrist's statement establishing his competence to manage his/her affairs is received sooner.
If you have any questions, please contact this office.
 Very truly yours,
 /s/ Milad S. Eskalis
 Milad S. Eskalis
 Assistant Deputy Director
_________________________________________ I Rosalie Weaver on 10/6/87 received the above notice and am responsible to take care of the matter.
Rosalie Weaver [different handwriting from above]
(Carson Aff., Exh. 12) Eskalis never received any psychiatrist's report rebutting the finding that Weaver was incompetent, and, accordingly, ceased sending pension checks. Plaintiff alleges that Herkommer approved Eskalis' actions. (Complaint at ¶ 19)
Government officials performing discretionary functions are protected by qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity shields officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *1043 457 U.S. at 818, 102 S.Ct. at 2738. In order for an official to be held liable despite this qualified immunity, the right allegedly violated must be "sufficiently clear that a reasonable official would understand that what he is doing violated that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The action in question need not previously have been held unconstitutional, but the unlawfulness must be apparent in light of preexisting law. Id.; Neu v. Corcoran, 869 F.2d 662, 665 (2d Cir.1989).
Contrary to plaintiff's contention, the Supreme Court has held and the Second Circuit has repeatedly emphasized that qualified immunity defenses should be decided before the commencement of discovery, for example, as here, on a motion for summary judgment. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir.1988); Francis v. Coughlin, 849 F.2d 778, 780 (2d Cir. 1988) (per curiam) and cases cited therein. This is because the test of whether an official acted in good faith is objective. Harlow, 457 U.S. at 817-819, 102 S.Ct. at 2737-38.
As is conceded by defendants,[3] plaintiff's right to continued pension payments is a property right protected by the due process clause of the Fourteenth Amendment. Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir.1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979), and cases cited therein. State law fully supports this conclusion. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Article 5, section 7 of the New York State constitution provides that
[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.
New York State courts have held that the right to a government pension is a property right protected by due process guarantees. Balash v. New York City Employees' Retirement System, 34 N.Y.2d 654, 311 N.E.2d 649, 355 N.Y.S.2d 577 (1974); see also Brown v. New York State Teachers' Retirement System, 107 A.D.2d 103, 485 N.Y.S.2d 871 (3d Dep't 1985).
Plaintiff's substantive due process claim asserts that defendants' practice of terminating benefits to incompetent claimants unless a committee or conservator is appointed is arbitrary. This policy is in sharp contrast to one followed by the Social Security Administration, which provides detailed regulations whereby the claimant may contest the finding of incompetence or, if the claimant is incompetent, provides an informal and inexpensive mechanism whereby a claimant's relative may be designated a "representative payee" and thus be able to cash claimant's check. See generally D. Sweeney & J. Lyko, Practice Manual for Social Security Claims, 157-59 (1980).
As these payments are not a "fundamental right," defendants' decision is reviewed under the most deferential standard of review and will not be overturned "unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." Mathews v. De Castro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (quoting Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937)); Gutierrez v. Bowen, 702 F.Supp. 1050, 1061 (S.D.N.Y.1989).
Defendants had a fiduciary responsibility to make effective payment to plaintiff and, thus, may be absolutely liable to the named beneficiary if they make payment to a person other than the named beneficiary. Ellis v. Kelsey, 241 N.Y. 374, 150 N.E. 148 (1925); Scott on Trusts § 226 (4th Ed.1988); see also Pete v. United Mine Workers of America Welfare & Retirement Fund of 1950, 517 F.2d 1275, 1286 (D.C.Cir.1975). Moreover, defendants' agency, NYCERS, is explicitly prohibited *1044 from making retirement allowance payments to an assignee. See Administrative Code of the City of New York, § 13-181 (1986). Plaintiff denies violating this prohibition, reasoning that commercial assignments usually require a contract and no one contends that Rosalie Weaver and Stephen Weaver had one. However, assignments of retirement allowances may be effected by assignments that would not be considered valid in a commercial context. See, e.g., Federal Tax Regulations, § 1-401(a)-13(c)(ii) (West 1989). Therefore, defendants have a valid argument, based on the prohibition of assigning retirement allowances, to defeat the claim that they acted arbitrarily when they adopted a practice designed to head off apparently unlawful assignments.
Furthermore, New York law holds that a conservator should be appointed to manage the business affairs of an incompetent person. Matter of Klein, 57 A.D.2d 895, 394 N.Y.S.2d 282 (2d Dep't 1977) (fact that wife was acting as de facto conservator did not eliminate need for a conservatorship and was contrary to legislative intent of "having judicial supervision and control of conservatorships to insure conservatee's welfare will not be jeopardized by potentially adverse interests of the conservator"). Plaintiff argues that appointment of a conservator may not be necessary, but the cases plaintiff cites for this proposition involve situations where the person was destitute, Health & Hospitals Corp. v. Gorman, 113 Misc.2d 33, 448 N.Y.S.2d 623 (N.Y.Sup.Ct.1982), or all known assets were in a bank trust that obviated the need for a conservator. Matter of Forward, 86 A.D.2d 850, 447 N.Y.S.2d 286 (2d Dep't 1982). Although it is true that New York courts must consider whether a conservator is necessary, given that NYCERS' pension beneficiaries are receiving a continuous stream of monthly payments, defendants had more than ample factual and legal support to conclude that incompetent claimants should not receive checks until alternative arrangements are made. While plaintiff is certainly correct that this policy does not afford a claimant and his family an inexpensive way to ensure the continued flow of checks, I find that defendants' practice is neither so arbitrary nor so capricious as to amount to a violation of due process. Certainly, defendants' actions were not so arbitrary as to violate any clearly established constitutional right of which a reasonable person would have known. Accordingly, defendants may rely on qualified immunity to defeat plaintiff's substantive due process claim.
Plaintiff's procedural due process claim is twofold. First, he alleges defendants acted improperly in this instance in cutting off his benefits without a proper finding of incompetence by relying on lay evidence and by shifting the burden to plaintiff. Second, he asserts that he was denied his constitutional right to a hearing before termination and, furthermore, was not given notice of the adverse action and an opportunity to meet it.
As for the first argument, plaintiff claims that defendants' determination of mental incompetence was a medical one such that defendants violated his due process rights by relying on evidence of two lay people  the "Hooper Holmes, Inc. investigator"[4] and plaintiff's niece  and by shifting the burden to claimant to prove he was not incompetent. Defendants respond that, upon receiving information from an investigator and plaintiff's niece indicating that plaintiff was not competent, defendants had more than sufficient reason to cease payments unless a committee or conservator were appointed. Plaintiff notes that incompetency is a legal status which should be arrived at only after full consideration of psychiatric evidence, not evidence from a lay person. Furthermore, plaintiff argues that defendants did not temporarily suspend payments pending further inquiry; rather, once they had evidence of incompetence, they shifted the burden to plaintiff to demonstrate otherwise.
*1045 SSA regulations require that an individual's incompetence be proved by clear and convincing evidence. Practice Manual at 158. This standard was not arrived at by chance; in 1978, the Supreme Court in a unanimous opinion, held that the due process clause requires that incompetence be proved by clear and convincing proof. Addington v. Texas, 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979). While Addington involved the liberty interest in freedom from civil commitment for incompetence, an important liberty interest, 441 U.S. at 425, 99 S.Ct. at 1809, the case at hand involves a property right  pension benefits  which also receives due process protection. Although the importance of the right changes the calculus enunciated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and thus the standard of proof required here may be less than clear and convincing, perhaps preponderance of the evidence, I find as a matter of law that defendants' actions denying claimant continued pension checks for an unlimited period based solely on lay evidence, while requiring that in rebuttal claimant present psychiatric evidence violated plaintiff's due process rights. The determination whether someone is incompetent is a medical judgment. Indeed, defendants implicitly have admitted this by requiring plaintiff to present a psychiatric opinion in rebuttal. As the determination of incompetence is a medical question, defendants, by acting on lay evidence to stop benefits and requiring medical evidence to resume them, shifted to plaintiff the full burden of proving that he was not incompetent. Whether due process requires proof by a preponderance of the evidence or by clear and convincing evidence, it is plain that due process is violated if the state shifts the burden to a claimant to prove he is not incompetent. In light of Addington, I find that the defect here was so obvious that a reasonable person would know it was a clear violation of plaintiff's constitutional rights, even though this specific conduct has not been held unconstitutional before. Neu, 869 F.2d at 665. Accordingly, I find that defendants may not rely on a qualified immunity defense as to this claim.
Defendants' actions suffer from a second failing: Defendants' notice to plaintiff's niece failed to adhere to the bedrock constitutional requirement that an agency must provide a claimant with "notice of the case against him and an opportunity to meet it." Mathews, 424 U.S. at 348, 96 S.Ct. at 909 (quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). Although the Second Circuit in Basciano, 605 F.2d at 610, held that a full trial-type hearing is not necessary  and I find no basis on which to distinguish Basciano as the question here is similarly a medical determination that can be decided on the basis of written materials, and the loss of plaintiff's pension checks would not threaten his "very means by which to live," Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970)  nevertheless claimant was denied the "core of the procedural due process right," L. Tribe, American Constitutional Law, § 10-15 at 732 (1988): notice of the adverse action and an opportunity to meet it. In particular, I find that defendants' notice of October 6, 1987 is so confusing that a reasonable lay person would not have known that he had an opportunity in fact to contest defendants' finding of incapacity. In Gutierrez, 702 F.Supp. at 1063, this court considered the adequacy of a notice sent to Social Security beneficiaries. Plaintiff in that case questioned whether the notice warned claimants that the Social Security Council could reopen cases on its own. In finding notice sufficient, I remarked that "[i]f the second sentence used the passive voice, as in `your case may be reopened if ...,' I might understand the McCuin [v. Secretary of Health and Human Services, 817 F.2d 161 (1st Cir.1987)] court's concern that the claimant is inadequately notified how the reopening can occur. But the sentence has a subject and an active verb ..." This case presents that issue squarely. The notice here does not clearly state that claimant had an opportunity to be heard; rather, it states, in the passive voice, that "His/her *1046 observation could be negated by a certification of a medically qualified psychiatrist." It is thus not clear who must provide this evidence. If that were the only defect, it might not be fatal. However, the reference to "his/her observation" comes after a sentence that is supposed to include the claimant's name, so it sounds as if it refers to the claimant declaring himself incompetent, which would make it nonsensical. Also, I find astounding defendants' use of a complicated word like "negate" in a letter sent to a lay person. Although the fourth paragraph in the letter makes a somewhat clearer reference to a psychiatrist's statement, I find that this reference does not cure the confusion.
Moreover, the circumstances of the letter indicate that Rosalie Weaver was not so much presented with a notice of an adverse decision which she could contest as with a fait accompli. Defendants had determined that plaintiff was incompetent and had decided that a conservator or committee was necessary (both of those words are circled by hand indicating that they were emphasized when the letter was presented to Rosalie Weaver); for her part, Rosalie Weaver, as the handwritten sentence at the bottom of the letter (but not in her handwriting) stated, was "responsible to take care of the matter" (emphasis added): i.e., commence proceedings to appoint a conservator or committee. Thus this document acted less as notice to tell Ms. Weaver that she and her uncle could dispute the existence of a problem, than as an order that she implement the solution decreed by NYCERS, the existence of the problem being a foregone conclusion.
Given all the circumstances, I am convinced that plaintiff did not receive notice reasonably calculated to apprise him and his niece that he had an opportunity to rebut defendants' finding that he was incompetent or, as the Supreme Court stated in Mathews, 424 U.S. at 349, 96 S.Ct. at 909, "a meaningful opportunity to present [his] case." The Supreme Court in Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978), found that a notification, while adequate to apprise individuals of the threat of termination of utility service, was not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" to their bills because it did not properly advise the customer of the availability of a procedure for protesting the proposed termination. 436 U.S. at 14, 98 S.Ct. at 1563. Notice and an opportunity to be heard are core components of due process whenever a property right is involved, and have been clearly and repeatedly enunciated by the Supreme Court and lower courts. See, e.g., Memphis Light, 436 U.S. at 13, 98 S.Ct. at 1562 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); Cosby v. Ward, 843 F.2d 967, 984-85 (7th Cir.1988) (notice failed to inform claimants properly of work rule requirements); Gray Panthers v. Schweiker, 652 F.2d 146, 169 (D.C.Cir.1980) (notice failed to apprise claimant of evidence against him); Newman v. Board of Education of City School Dist. of N.Y., 594 F.2d 299, 305 (2d Cir.1979) (same). Based on Memphis Light and the other cases cited above, I find that defendants violated a clearly established right of plaintiff by presenting him with a fait accompli rather than a meaningful opportunity to rebut a finding of incompetence. Accordingly, I find that qualified immunity is not available as a defense to this claim either.[5]
*1047 Defendants' response to these procedural inadequacies is to argue that the decision was in fact correct. Indeed, defendants claim that plaintiff's lawyer conceded that plaintiff was incompetent in papers he filed opposing defendants' earlier motion for appointment of a guardian ad litem: "Mr. Weaver's inability to understand and sign documents ... predicates proceeding by next friend...." (Carson Aff., Exh. 10) However, plaintiff made no such concession. The sentence quoted above continues: "Mr. Weaver's inability to understand and sign documents ... predicates proceeding by next friend, but does not imply incompetency for any other legal purpose." (Weiss June 3, 1988 Aff. at ¶ 8) (emphasis added) Plaintiff's memorandum of law of the same date makes crystal clear that plaintiff was not conceding incompetence for purposes of the case as a whole. (Plaintiff's Memorandum of Law in Opposition to Motion to Disqualify the Next Friend, Point I) Moreover, even if plaintiff's lawyer did concede in June 1988 that plaintiff was incompetent, it remains an open question whether plaintiff was incompetent in October 1987, when defendants threatened to terminate his benefits. The question here is whether defendants violated plaintiff's procedural due process rights when they cut off his benefits in early 1988. Events after that date which may demonstrate that defendants were right do not change the fact that they may have violated his rights at the time they took their action. For the same reason, that defendants may have had other valid grounds for termination which were discovered only months after the decision to terminate had been made  that Rosalie Weaver had been endorsing plaintiff's checks for some time, that plaintiff no longer resided where the checks were sent because he had been hospitalized for two years, and that plaintiff's pension benefits should have been reduced by a debt he owed the New York City Health and Hospitals Corporation  is irrelevant to the inquiry at hand.
Finally, defendants assert that they had to take some action; otherwise, they would have violated their fiduciary responsibility to make effective payment. I agree and, accordingly found at pp. 5-7 that defendants did not violate plaintiff's rights by adopting a practice of terminating benefits to incompetent individuals pending appointment of a committee or conservator. However, that defendants were obligated to do something does not validate the way in which they terminated plaintiff's benefits. In this regard, it should be stressed that defendants did not temporarily suspend payments pending further inquiry. Rather, on the basis of information from two lay people, defendants decided that plaintiff was incompetent and notified plaintiff that a committee or conservator had to be appointed; otherwise, his benefits would be ended in 90 days. In doing so, defendants failed to apprise plaintiff properly of his right to contest their finding, and shifted the burden to him to persuade them that he was not incompetent. At trial, defendants may be exonerated; at this stage, however, I find that defendants may have violated plaintiff's procedural due process rights.
To summarize, defendants Eskalis and Herkommer may rely on qualified immunity to defeat plaintiff's substantive due process objection to their policy of terminating benefits to incompetent claimants pending appointment of a committee or conservator. Accordingly, their motion for summary judgment is granted on that claim. On plaintiff's procedural due process claims of burden shifting and inadequate notice of the right to be heard, I find that Eskalis and Herkommer may not invoke qualified immunity. However, Eskalis' and Herkommer's qualified immunity succeeds against plaintiff's procedural due process claim that they acted as prosecutor and judge. See p. 13 n. 5. Accordingly, their motion for summary judgment on plaintiff's procedural due process claim is granted only as *1048 to the portion challenging the neutrality of the decision maker; otherwise, their motion is denied.
SO ORDERED.
NOTES
[1] 42 U.S.C. § 1983 (1982).
[2] As provided in this court's March 10, 1989 order, plaintiff's motion for summary judgment against NYCERS is held in abeyance pending further order of the court.
[3] As this motion concerns only defendants Eskalis and Herkommer, the term "defendants" will be used throughout this opinion to mean only those two defendants, not NYCERS.
[4] Defendants have not disputed plaintiff's charge that this investigator had no specialized training in determining mental incompetence, and I will therefore assume that the investigator was a lay person.
[5] Plaintiff claims also that he was denied procedural due process because defendants acted both as prosecutor and judge in deciding that he was incompetent. The Supreme Court has held that the combination of investigative and adjudicative functions is not itself a violation of due process absent a showing that the combination interferes with the "honesty and integrity" of the adjudicator such that there is a real risk of actual bias or prejudgment. Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); see also Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982); Marshall v. Jerrico, Inc., 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). Plaintiff has made no showing of actual bias, see, e.g., Doyle v. Secretary of Health & Human Services, 848 F.2d 296, 302 (1st Cir.1988), Alfaro Motors, Inc. v. Ward, 814 F.2d 883 (2d Cir.1987), and, consequently, defendants may rely on qualified immunity on this claim.