605 F.2d 605
 CA 78-4251 Gennaro BASCIANO, Individually and on behalf of
all other persons similarly situated, Plaintiff-Appellant,
v.
Harold HERKIMER, Individually and as Executive Director of
the New York City Employees' Retirement System and
Head of the Bureau of Retirement and
Pensions, et al., Defendants-Appellees.
 No. 997, Docket 78-7035.
 United States Court of Appeals,
Second Circuit.
 Argued May 31, 1978.
Decided Nov. 15, 1978.
 
 Harold Adler, Brooklyn, N.Y. (John C. Gray, Jr., and Brooklyn Legal Services Corp., Brooklyn, N.Y., on the brief), for plaintiff-appellant.
 L. Kevin Sheridan, Asst. Corp. Counsel, New York City (Allen G. Schwartz, Corp. Counsel, New York City, on the brief), for defendants-appellees.
 Before FRIENDLY and TIMBERS, Circuit Judges, and HOFFMAN, District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered in the Southern District of New York, Charles M. Metzner, District Judge, On a motion for summary judgment by the City of New York, dismissing the complaint of a former City employee who claimed that the City's procedure for determining his eligibility for accident disability retirement benefits deprived him of due process of law.
 
 
 2
 For the reasons below, we affirm.
 
 I.
 
 3
 The facts are straightforward and not in dispute. Both sides moved for summary judgment below.
 
 
 4
 On February 27, 1973 Basciano sustained a back injury while employed as a laborer by the City's Department of Water Resources. He was engaged at the time in pulling rods from a sewer in Brooklyn.
 
 
 5
 A week after the accident Basciano reported his back pain to his own doctor. The latter found the x-rays normal but diagnosed Basciano's condition as a paralumbar muscle spasm with resulting tenderness in the lower back. The doctor advised Basciano to rest at home, recommended a course of physical therapy, and told him not to return to work. Basciano's condition thereafter was re-evaluated periodically by his doctor whose final diagnosis was chronic back spasm. Basciano did not return to work.
 
 
 6
 On November 21, 1974, twenty-one months after the accident, Basciano applied for accident disability retirement benefits under the City's Employees' Retirement System (the System). In support of this application he submitted reports of seven doctors regarding his alleged disability, together with statements from his co-workers and his supervisor concerning the accident.
 
 
 7
 On April 29, 1975 Basciano was interviewed by the Chief of the System's Medical Division concerning his employment status and the circumstances of the accident.
 
 
 8
 On June 12, 1975 he was examined by three doctors from the System's Medical Board (the Board). During this examination the doctors probed the area around Basciano's injury and instructed him to perform a number of movements. Their report noted that motion in his lower back was restricted, that he complained of tenderness, but that there was no spasm (contrary to the diagnosis of Basciano's doctor). On the basis of this examination and the medical history, the Board concluded that Basciano was not disabled and therefore was not eligible for accident disability retirement benefits.
 
 
 9
 The Board's report was forwarded to the System's Trustees who denied Basciano's application on August 15, 1975.
 
 
 10
 The Trustees thereafter advised Basciano that he had the right to examine the evidence used by the Board in reaching its decision. He did so. After reviewing the evidence he requested the Board to reconsider its decision. He also submitted additional evidence not previously considered by the Board.[1]
 
 
 11
 On November 23, 1976 Basciano again was examined by three doctors from the Board, none of whom had participated in Basciano's prior examination. They again found some restriction of movement but no muscle spasm. The Board affirmed its prior decision that Basciano was not disabled and recommended that his application for disability benefits be denied.
 
 
 12
 On January 23, 1977 the Trustees accepted the Board's recommendation and affirmed the Trustees' prior denial of benefits to Basciano.
 
 
 13
 On May 17, 1977 Basciano commenced the instant class action[2] pursuant to 42 U.S.C. § 1983 (1970) seeking declaratory and injunctive relief. Among other claims, he asserted that the City's failure to grant an opportunity for a hearing to applicants who are denied accident disability retirement benefits violates the due process clause of the Fourteenth Amendment.
 
 
 14
 Upon cross-motions for summary judgment, the district court on December 13, 1977 filed an opinion holding that Basciano's interest in accident disability retirement benefits is protected by due process and that the System's procedure satisfied the requirements of due process.
 
 
 15
 From the judgment entered December 15, 1977 on Judge Metzner's opinion, the instant appeal has been taken.
 
 II.
 
 16
 Basciano challenges on due process grounds the constitutionality of the procedure pursuant to which he was denied disability retirement benefits under the City's retirement system. This requires an analysis of the relevant provisions of the Administrative Code of the City of New York (the Code), which are set forth in the margin.[3] Such analysis is rendered somewhat difficult by the obscurity of those provisions. Nevertheless, the following is a brief summary of the procedure provided by the Code and the procedure pursuant to which Basciano's application was processed in the instant case, as stated above.
 
 
 17
 Section B3-40.0 of the Code sets forth the procedure for determining whether a City employee has become physically or mentally incapacitated for further work as the result of an accident sustained while working as a City employee. Such determination in favor of the employee is a necessary predicate for awarding him disability retirement benefits.
 
 
 18
 The determination required by § B3-40.0 is made by a Medical Board (the Board) composed of three physicians in accordance with § B3-13.0 of the Code. The applicant for disability retirement benefits must submit to a medical examination and investigation by, or under the supervision of, the Board. The applicant may submit documentary medical evidence to the Board before his medical examination.
 
 
 19
 If the Board finds that the applicant has sustained an accident disability as the result of his City employment, it so certifies to the Trustees who are constituted in accordance with § B3-2.1 of the Code. In such event, the Trustees are required to retire him for such disability.
 
 
 20
 If, however, the Board makes a determination adverse to the applicant, the latter may review the evidence relied upon by the Board and may request reconsideration upon a showing of new evidence. The Trustees in such event may refer the case back to the Board for re-evaluation. The Board then may require the applicant to submit to a further medical examination.
 
 
 21
 In arguing that this procedure is constitutionally inadequate, Basciano contends that an application for disability should not be denied on the basis of a Board examination until the applicant is given a full hearing before an impartial decision maker. At such a hearing, Basciano contends, the applicant should be entitled to subpoena physicians, to testify himself, and to present other evidence on his own behalf.
 
 
 22
 We shall discuss below Basciano's contentions, as well as other aspects of the procedure which appear to be bothersome both on the face of the Code and as applied here.
 
 III.
 
 23
 Before turning to the central issue in the case whether the City's procedure for determining eligibility for accident disability retirement benefits deprived Basciano of due process of law we must decide preliminarily whether his interest in those benefits is of such a character as to warrant due process protection.
 
 
 24
 The district court held that Basciano's interest in such benefits is protected by due process. We agree. Those who meet the eligibility requirements of the City's Employees' Retirement System are entitled to disability retirement benefits under the Code. Where a scheme such as this gives rise to a valid claim of entitlement to a benefit, a property interest protected by the due process clause of the Fourteenth Amendment is created. Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 9-12 (1978); Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
 
 
 25
 We hold therefore that Basciano has satisfied the threshold requirement of establishing an interest entitled to due process protection.
 
 IV.
 
 26
 This brings us to the central issue in the case as stated above whether the City's procedure for determining Basciano's eligibility for accident disability retirement benefits deprived him of due process of law. The district court held that it did not. We agree.
 
 
 27
 We look for guidance to Mr. Justice Powell's formulation in Mathews v. Eldridge, 424 U.S. 319 (1976), of the three distinct factors to be analyzed in determining whether administrative procedures are constitutionally sufficient:
 
 
 28
 "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.
 
 
 29
 The issue in Mathews was whether due process required an opportunity for an evidentiary hearing before termination of Social Security disability benefits. Mr. Justice Powell's formulation set forth above took account of the Court's prior decisions, including Goldberg v. Kelly, 397 U.S. 254, 263-71 (1970). Moreover, as we also were reminded in Mathews:
 
 
 30
 " ' "(D)ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' Morrissey v. Brewer, 408 U.S. 471, 481 (1972)." 424 U.S. at 334.
 
 
 31
 In the instant case we look first at the private interest affected by the official action. While Basciano had a substantial interest in the outcome of the proceeding, his interest was less compelling than that of an individual denied by government action the "very means by which to live". Goldberg, supra, 397 U.S. at 264. As the Court observed in Mathews, supra, 424 U.S. at 340-41, eligibility for disability benefits does not turn on financial need. Here, Basciano has received a Workmen's Compensation payment and Social Security Act disability payments. See note 1 Supra.
 
 
 32
 The adequacy of the present procedure provided by the Code, and the potential value of additional or substitute procedural safeguards, depends largely on the purpose of the inquiry. In order to establish an applicant's eligibility for accident disability retirement benefits the Board must determine that: (1) he is "physically or mentally incapacitated for the performance of city-service," (2) "as a natural and proximate result of an accidental injury received in such city-service," and (3) "such disability was not the result of wilful negligence on (his) part." Code § B3-40.0. Here Basciano submitted uncontroverted affidavits by his co-workers that his injury resulted from an on-the-job accident; it is not claimed that his injury resulted from negligence on his part.[4] Consequently, the purpose of the inquiry was essentially to make a medical determination as to whether Basciano's physical condition incapacitated him for the performance of city-service. The medical examination was made by a medical board composed of three physicians, constituted in accordance with § B3-13.0 of the Code. Their responsibility was to make a medical judgment, not to function as adversaries or advocates. The fairness of this eligibility determination therefore turned on the reliability of the Board's conclusion, not on questions of witness credibility.
 
 
 33
 Certain aspects of the procedure provided by the Code and followed in the case of Basciano tend to assure reliability of the Board's conclusion. First, Basciano availed himself of the opportunity to present the opinions of his own doctors; these were considered by the Board in connection with its first examination. Second, he later was permitted to present further evidence to the Board in support of his request for reconsideration of its initial decision. Third, he was examined by six different doctors on behalf of the Board.
 
 
 34
 Despite all of this, Basciano has never indicated in what respect the Board's specific findings were incorrect. A mere difference of opinion between Basciano's doctors and those who examined him on behalf of the Board concerning the ultimate issue of disability does not establish that the Board's decision was unreasonable. Moreover, Basciano has never specified in what respect, if any, the present procedure resulted in an erroneous determination.
 
 
 35
 We are not persuaded of the value of the additional or substitute procedural safeguards which Basciano asserts are required by due process. The gravamen of his complaint is that subsequent to his initial medical examination he was not given a hearing before the Trustees; and that the Trustees were required to accept the findings of the Board.[5] Consequently, according to Basciano, he had no way of challenging the effectiveness of the examination or of insuring that the examining physicians actually considered the evidence submitted in support of his application. Absent such a hearing under the present procedure, Basciano asserts that he could not cross-examine the Board members. Moreover, he contends that, because evidence in support of his application could be submitted only prior to the initial examination, he had no opportunity to rebut the Board's initial findings.
 
 
 36
 While questions of credibility and veracity often are best resolved in a trial-type hearing, we believe that evidence relevant to a medical determination can be presented as effectively in writing as orally. Moreover, the value of cross-examination to discredit a professional medical opinion at best is limited. A trial-type proceeding before the Trustees presumably would require the resolution of conflicting medical opinions by lay administrators. We know of no evidence that this would assure a more reliable final determination sufficient to make this an element of due process.[6]
 
 
 37
 Basciano contends that only at such a hearing could he have presented evidence to rebut that relied upon by the Board. This overlooks that prior to the initial examination Basciano himself provided all the evidence relied upon by the Board (other than its own examination) and had the right, which he exercised, to present further responsive evidence on an application for reconsideration.
 
 
 38
 Basciano also asserts that such a hearing would have enabled him to cross-examine the members of the Board concerning the propriety of their examination techniques and the sufficiency of their findings. As a practical matter, as part of his request for reconsideration submitted to the Trustees, he could have challenged the thoroughness of the examination or the weight accorded specific evidence. In any event, in view of the availability of his prior medical history and the nature of his injury, the record does not support his characterization of the examination as "cursory".
 
 
 39
 We hold that Basciano has not established his claim of inadequacy of the present procedure as applied to him; and that he has failed to demonstrate that additional or substitute procedural safeguards would have enhanced significantly the accuracy of his eligibility determination.[7]
 
 
 40
 Finally, our conclusion as to the adequacy of the City's present procedure is consistent with the City's very substantial interest in avoiding the administrative cost of setting up a procedure for trial-type hearings which we are satisfied ultimately would contribute very little to the accuracy and reliability of eligibility determinations. The City's interest in avoiding such administrative costs is particularly strong here since such costs presumably would have to be borne by the Retirement System.
 
 
 41
 To summarize: The City's present procedure provides for a reasonably reliable determination of eligibility for accident disability retirement benefits. A trial-type hearing before the Trustees would not enhance significantly the accuracy of a disability determination. While the interest of the individual in receiving benefits is significant, the City has a substantial interest in avoiding the administrative cost of any unnecessary procedure. We conclude that the City's present procedure satisfied the requirements of due process in this case.[8]
 
 
 42
 Affirmed.
 
 
 
 *
 Hon. Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation
 
 
 [1]
 The additional evidence submitted by Basciano at this time related to (1) a determination by the New York Workmen's Compensation Board on January 23, 1976 that he had sustained a permanent partial disability, as the result of which he was awarded a payment, and (2) a determination by the Social Security Administration on September 14, 1976 that he had sustained an impairment which prevented him from engaging in substantial gainful employment, as the result of which he was awarded disability insurance payments
 
 
 [2]
 Judge Metzner's opinion of December 13, 1977, referred to below, denied Basciano's motion for class certification
 
 
 [3]
 The relevant provisions of the Administrative Code of the City of New York are under Chapter 3, Title B, NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM (1976):
 " § B3-13.0 Medical board.
 a. (1) There shall be a medical board of three physicians. One of such physicians shall be appointed by the board and shall hold office at the pleasure of such board, one shall be appointed by the administrator of health services or any successor to such administrator's principal functions in relation to health (other than mental health and mental retardation) and shall hold office at the pleasure of such administrator or successor, and the third shall be appointed by the personnel director of the department of personnel and shall hold office at the pleasure of such director.
 (2) The board, the administrator of health services or any such successor and the personnel director shall each have power to appoint one or more but not exceeding four alternate physicians, who shall hold office at the pleasure of such appointing board or official. Whenever the board of trustees of the retirement system shall so direct, the functions, powers and duties of the medical board, in addition to being performed and exercised by the three physicians appointed pursuant to paragraph one of this subdivision, shall be performed and exercised by one or more groups of three physicians as hereinafter prescribed. Each such group of three physicians shall function separately as the medical board and each such group may consist partly of a physician or physicians appointed pursuant to such paragraph one and partly of one or more alternate physicians or may consist entirely of alternate physicians; provided, however, that one of the physicians or alternate physicians in each such group shall be appointed by the board, one by the administrator of health services or any such successor and one by the personnel director.
 (Cum.Supp.1977-78).
 § B3-40.0 Retirement, for accident disability. Medical examination of a member in city-service for accident disability and investigation of all statements and certifications by him or on his behalf in connection therewith shall be made upon the application of the head of the agency in which the member is employed, or upon the application of a member or of a person acting in his behalf, stating that such member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of wilful negligence on the part of such member and that such member should, therefore, be retired. Such application shall be filed within two years from the happening of such accident, except, however, that such requirement as to time of filing shall not apply to any such application which (1) is filed by or with respect to a member who is a member of the uniformed force of the department of sanitation (as such force is defined in subdivision a of section B3-36.2 of the code) and (2) is based on an accident occurring wholly on or after July first, nineteen hundred sixty-three. If such medical examination and investigation shows that any member, by whom or with respect to whom an application is filed under this section, is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, the medical board shall so certify to the board stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board shall retire such member for accident disability forthwith.
 b. 1. If such application is denied solely on the ground that such member is not, at the time of such examination, physically or mentally incapacitated for the performance of city-service, such application may thereafter be renewed during such member's city-service at any time within five years from the happening of the accident but preceding the date on which such member shall have reached his minimum service retirement age, provided he submits himself to such further examinations as the medical board may require.
 
 
 [2]
 Such further application or applications shall be considered on the same basis as the original application
 
 
 [3]
 The medical board may at any time within five years of the happening of the accident, upon findings that such member is eligible for and should be retired for accident disability in accordance with the provisions of this section, certify to the board said fact, and such board shall retire such member for accident disability forthwith
 
 
 [4]
 The provisions of paragraphs one, two and three of this subdivision b shall not apply in the case of any member who is a member of the uniformed force of the department of sanitation and who files an application under subdivision a of this section based on an accident occurring wholly on or after July first, nineteen hundred sixty-three."
 
 
 [4]
 To the extent that, under the rather opaque provisions of the Code, the Medical Board has the effective final say on issues of whether the injury was sustained as a result of city-service and was not a result of wilful negligence by the employee, these issues are quite different from the one here presented. These are areas in which questions of credibility could be important. The Medical Board has no expertise; and the lack of any right of cross-examination of witnesses before either the Medical Board or the Trustees is troubling
 
 
 [5]
 The Code does not say that the Trustees are required to accept negative findings by the Board, although we suppose they are likely to do so
 
 
 [6]
 In the 1977 Supplement to his Administrative Law Treatise, § 7.00-1.1, Professor Kenneth Culp Davis states:
 "In England the question whether a human body is disabled is determined by physicians in government employ who use physicians' methods of examining the body and making a decision without the benefit of allowing lawyers to complicate the process. Might that be more sensible than the American system? . . ."
 See Garner, Administrative Law (3d ed. 1970) 236 and R. v. Medical Appeal Tribunal (North Midland Region), Ex parte Hubble (1958) Q.B. 228, (1958) All.E.R. 374; Friendly, Foreword to Schwartz & Wade, Legal Control of Government: Administrative Law in Britain and the United States xvi n. 5 (1972); and Friendly, "Some Kind of Hearing", 123 U.Pa.L.Rev. 1267, 1285 (1975).
 
 
 [7]
 Both sides, and particularly the City, urge upon us Siletti v. New York City Employees' Retirement System, 401 F.Supp. 162, 167-68 (S.D.N.Y.1975), Aff'd with oral opinion, 556 F.2d 559 (2 Cir.), Cert. denied, 434 U.S. 829 (1977), where the district court held that confrontation and cross-examination of witnesses was not required since the credibility of Board members was not likely to be put in issue. Aside from the lack of precedential effect of Siletti, We think that the focus of that decision was on the question of an adversary hearing and not on whether certain procedures here urged by Basciano were required. We do not rely upon Siletti for our holding in the instant case
 
 
 [8]
 Our holding that the City's present procedure satisfied the requirements of due process as applied to the instant case is not to be construed as foreclosing a successful challenge on due process grounds in another case on different facts
 We are not unmindful of certain aspects of the City's procedure under the somewhat obscure provisions of the Code which might prove bothersome in a different case. For example, an employee arguably might claim that he has no way of making known to the Trustees how rudimentary his examination by the Board doctors had been; or that the statement of reasons included in the Board's report to the Trustees may have been so uninformative as to preclude the employee from making any meaningful objection to the Trustees; or that the Trustees, before determining whether an employee "is physically or mentally incapacitated for the performance of city-service", should be required to provide the employee with a detailed statement of reasons and an opportunity to file opposing material with the Trustees. Cf. Matter of Balash v. New York City Employees' Retirement System, 34 N.Y.2d 654, 311 N.E.2d 649, 355 N.Y.S.2d 577 (1974); but see also Meschino v. Lowery, 31 N.Y.2d 772, 774, 290 N.E.2d 825, 826, 338 N.Y.S.2d 625, 626 (1972).
 We would urge the City to consider amendment of its procedures to eliminate such objections. While we have carefully considered each of these objections in the context of the instant case and find that they do not change our holding, we leave to another day how we would rule on different facts.
 In short, all we hold today is that in This case, on These facts, This Plaintiff was not denied due process of law by the City's procedure As here applied.