William **COFFRAN,** Plaintiff,

v.

**BOARD OF TRUSTEES OF the NEW YORK CITY PENSION FUND,** Raymond C. Kelly, as Police Commissioner, and Chairman of the Board of Trustees of the Police Pension Fund, the Article II Medical Board, Eloise Archibald, Director, Psychological Services Division, N.Y.C.P.D., and Robert E. Thomas, Supervising Chief Surgeon, N.Y.C.P.D., Defendants.

No. 93 Civ. 3048 (JFK).

United States District Court,
S.D. New York.

Jan. 10, 1994.

Kliegerman & Friess, New York City (Rosemary Carroll, of counsel), for plaintiff.

Corporation Counsel for City of New York, New York City (Charles L. Finke, of counsel), for defendants.

## OPINION AND ORDER

KEENAN, District Judge:

Before the Court is Plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56, alleging that defendants' procedures for determining whether plaintiff should be retired from the New York City Police Department on a psychiatric disability violate his civil and due process rights. Defendants have cross moved for summary judgment, alleging that their procedures are consistent with plaintiff's rights. For the reasons that follow, plaintiff's motion is granted. Defendants' motion is denied.

### BACKGROUND

Plaintiff William Coffran is employed by the New York City Police Department as a sergeant of police. Defendant Board of Trustees of the Police Pension Fund ("Trustees") is charged by state and local law with the administration of the police pension fund pursuant to the Administrative Code of the City of New York, section B18–13–0 *et seq.* Defendant Police Commissioner Raymond E. Kelly is the Chairman of defendant Trustees. Defendant Article II Medical Board ("Medical Board") is a body created pursuant to the New York City Administrative Code. Defendant Robert Thomas is the Chief Medical Officer of the New York City Police Department. Defendant Eloise Archibald is the Director of the Psychological Services Division, New York City Police Department.

Coffran has been a police officer since January of 1981. He was promoted to sergeant in December of 1984. After completing his probationary term as sergeant, Coffran achieved tenure. Coffran served in this capacity satisfactorily until July 11, 1989. He has passed the examination for promotion to lieutenant of police. He has received consistently "above standards" performance evaluations. He has also received various citations, including eight for Excellent Police Duty, one for Meritorious Duty, and has additionally been named "Cop of the Month." Coffran has never been subjected to discipline relating to the performance of his job duties.

Coffran's difficulties stem not from his job performance, but rather from his complicated personal life. Coffran is now apparently divorced, although he still lives with his ex-wife, their five children, and four additional foster children. His difficulties began in 1985, when he was found guilty and disciplined for damaging and taking property belonging to his then girlfriend.

During 1989 and 1990, while still married but separated from his wife, Coffran was involved in another "boyfriend/girlfriend" relationship, this time with Debra Herman. Herman filed complaints against Coffran in June and in November of 1989, alleging assault and harassment. Herman has apparently filed such complaints against others before Coffran. On November 9, 1989, Coffran was placed on restricted duty by the Psychological Services Unit and his firearms were taken away. Coffran received a disciplinary charge relating to these complaints, to which he entered a *nolo contendere* plea. Coffran subsequently was referred to the Counseling Unit, which recommended a return to full duty on January 24, 1990.

Coffran returned to full duty. In June of 1990 while off duty, Coffran was charged with third degree assault on a male neighbor of Herman. The criminal charges were dismissed outright. The administrative charges relating to this incident were handled in a departmental trial, after which Coffran was found "not guilty." Those trying Coffran were influenced by the fact that Herman failed to testify at this trial, that the male accuser was not credible, that the male accuser had approached Coffran first, that Coffran suffered by far the greater injuries, and that Coffran himself called the police. On February 14, 1991, Coffran was again psychiatrically evaluated for duty. That examination found that there was "nothing to prevent Sgt. Coffran from returning to full duty and having his firearms restored." Carroll Affirmation, exhibit G.

Shortly thereafter, on February 25, 1991, Herman filed another complaint against Coffran alleging assault. A neighbor called the police and made a report after hearing Herman screaming and finding her with a torn shirt and bruises. Departmental charges were again lodged against Coffran. After another departmental trial, Coffran was again found to be "not guilty." Again, Herman and two other witnesses failed to testify.

On April 5, 1991, Coffran was again psychiatrically evaluated. The evaluation noted Coffran's problems, and diagnosed: "Antisocial Personality Disorder characterized by conflicts with authority, duplicity in personal relationships, difficulty in sustaining work performance and failure in parental responsibilities." Finke Affirmation, exhibit 13. On October 1, 1991, as a result of this evaluation, a staff psychologist made a recommendation, endorsed by defendant Archibald, for an involuntary psychiatric retirement survey of Coffran. The New York City Police Department submitted an application for involuntary psychiatric retirement for Coffran. Defendant Thomas, on October 15, 1991, recommended that in lieu of this survey, alternative administrative procedures could be considered because charges were still pending at that time. Defendant Kelly, however, endorsed the recommendation for the survey and defendant Thomas took no steps to further avoid the survey.

On March 2, 1992, pursuant to the direction of defendant Kelly, Coffran was examined by the Medical Board. Previously, on February 5, 1992, Coffran had requested his Psychological Services Division file but was not provided with it prior to the March 2, 1992 examination. Coffran was not permitted to have either his lawyer or a medical professional present at the March 2, 1992 examination. Thereafter, at the March 2, 1992 examination, the Medical Board recommended the Ordinary Disability Retirement of Coffran, with a diagnosis of Personality Disorder with Anti–Social and Impulsive Features.

On June 2, 1992, the Trustees remanded the application to the Medical Board for reconsideration based on letters submitted by Coffran's privately retained psychiatrist, who recommended that Coffran be returned to full duty. On July 2, 1992, the Medical Board examined Coffran again, and re-affirmed their previous recommendation, citing off-duty incidents with women that reflected

poor judgment and unpredictable behavior on Coffran's part.

In August of 1992, Coffran submitted new evidence against involuntary retirement, consisting of psychiatric opinion, psychological testing, a psychological evaluation and decisions of the Trial Commissioner in disciplinary proceedings. The Trustees remanded the matter a second time to the Medical Board for consideration of Coffran's new evidence. On March 1, 1993, the Medical Board re-affirmed its prior recommendation for involuntary psychiatric retirement.

On May 10, 1993 another remand was requested and on May 13, 1993, the matter was remanded to the Medical Board for a third time. On August 23, 1993, the Medical Board once again re-affirmed its earlier decision to retire Coffran on ordinary disability. The Trustees have adopted a "two automatic remands" rule. Inasmuch as this application has been remanded more than two times already, the application may not be remanded again unless the Trustees so desire. On November 10, 1993, the Trustees considered the application and tabled it for one month. At the December 1993 meeting, the Trustees voted to retire Coffran. That retirement will become effective approximately thirty days after the meeting.

In addition to being retired, Coffran has been passed over for promotion to lieutenant of police allegedly because of his restricted duty status and the pending application for retirement. Coffran has been monitored on the job since 1989 by his superiors—the monitoring reports reflect no serious problems. Coffran states that he wants to continue his law enforcement career. If Coffran applies for other New York City municipal employment, he will be required to disclose his prior employment with the police department, and will be required to authorize the release of his termination records, if he hopes to obtain employment with the City. If Coffran applies to any other police department, they will require disclosure of these records as well.

## DISCUSSION

To demonstrate a violation of Section 1983, it must be shown that a person acting under color of state law deprived an individual of the rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. 42 U.S.C.A. § 1983. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Coffran contends that his Fourteenth Amendment due process rights have been violated. Coffran argues that his liberty and property interests that are implicated by an involuntary psychiatric retirement are not sufficiently safeguarded so as to accord him due process of law.

Coffran alleges that the procedures used by defendants for consideration of the Police Commissioner's application for involuntary psychiatric retirement deprive Coffran of his property interest in continued employment. Coffran additionally contends that his liberty interests have been violated—he is precluded from pursuing his chosen profession in law enforcement, and his good name and professional reputation have been damaged. Coffran argues that these alleged denials of due process violate his civil rights as assured by the Fourteenth Amendment and protected by 42 U.S.C. § 1983. Coffran has moved for summary judgment on his claims, pursuant to Fed.R.Civ.P. 56.

Defendants have cross-moved for summary judgment to dismiss Coffran's claims.

## I. Standards for Summary Judgment

■ This Court may grant summary judgment only if there is no genuine dispute as to any material fact and the moving party is thus entitled to judgment as a matter of law. *See, e.g., Silver v. City University of New York,* 947 F.2d 1021, 1022 (2d Cir.1991); *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985). The role of the Court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any

factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11. *See, e.g., Twin Lab. Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d at 103; *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

 The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions to file, together with affidavits, if any," that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the movant meets this initial burden, the party opposing the motion must then demonstrate that there exists a genuine dispute as to the material facts. *Id.; see also Silver v. City University of New York*, 947 F.2d at 1022; *Greater Buffalo Press, Inc. v. Federal Reserve Bank*, 866 F.2d 38, 42 (2d Cir.), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). To show such a "genuine dispute," the opposing party must come forward with enough evidence to allow a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Cinema North Corp. v. Plaza at Latham Assoc.*, 867 F.2d 135, 138 (2d Cir. 1989).

Here, Coffran and defendants agree that there are no material facts in dispute in this action that preclude summary judgment. The Court agrees with the parties that there are no material facts in dispute. Their disagreement is purely one of law—specifically, what pre-retirement procedures must be followed in an involuntary psychiatric discharge situation to afford due process of law.

## II. The Fourteenth Amendment Due Process Requirements

The Due Process Clause of the Fourteenth Amendment provides that the state and municipal governments shall not take a person's life, liberty, or property, without due process of law. Due Process contemplates fair procedure, which requires an opportunity to present objections to a proposed action to a fair and neutral decisionmaker. In this case, Coffran alleges that the municipal government deprived him of his property and liberty interests protected by the Fourteenth Amendment.

 The Fourteenth Amendment guarantees of due process protect an individual's liberty and property from deprivation by a state government employer. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Protected interests are defined by state law. *Id.* at 577, 92 S.Ct. at 2709; *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

### A. Does Coffran have a Protected Property Interest?

 Under New York law, a tenured municipal employee's interest in continued employment is a property interest protected by the Fourteenth Amendment. *See Gargiul v. Tompkins*, 704 F.2d 661, 668 (2d Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Berns v. Civil Serv. Comm'n*, 537 F.2d 714, 716 (2d Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977). A municipal employee has an interest in continued employment unless there is sufficient cause for the dismissal of such an employee. *See Laurido v. Simon*, 489 F.Supp. 1169, 1177 n. 10 (S.D.N.Y.1980); *Snead v. Dept. of Social Services*, 355 F.Supp. 764, 771 (S.D.N.Y.1973).[1] *See, e.g., Huntley v. Community Sch. Bd.*, 543 F.2d 979, 984 (2d Cir.1976); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976).

---

1. As the Court noted in *Lenihan v. New York*, 636 F.Supp. 998, 1018 n. 8 (S.D.N.Y.1985), *Snead* has a complex procedural history. The action was ultimately dismissed for lack of standing and the decision is therefore dictum. However, as the Court noted and this Court heartily agrees, Judge Weinfeld, acting as part of a three-judge district court, offered a thoughtful analysis of what due process requires in a mental incapacity case.

Coffran was a tenured sergeant in the New York City Police Department. The Court finds that Coffran therefore had a protected property interest in continued employment.

### B. Does Coffran have a Protected Liberty Interest?

 While injury to reputation itself is not a deprivation of liberty (or property), if governmental acts injure a person's reputation so that he has lost significant employment opportunities, there is a loss of liberty. *See Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). The Fourteenth Amendment safeguards an individual from action that jeopardizes "good name, reputation, honor, or integrity" or seriously damages standing and associations in the community. *Board of Regents v. Roth*, 408 U.S. 564, 574, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). *See also Lenihan v. New York*, 636 F.Supp. 998, 1017 (S.D.N.Y. 1985). A charge of mental illness is an action that causes such a stigma. *See Lombard v. Board of Education*, 502 F.2d 631, 637 (2d Cir.1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Lenihan*, 636 F.Supp. at 1018; *Snead*, 355 F.Supp. at 771. A charge of mental incapacity or mental illness severely diminishes employment opportunities. *Snead*, 355 F.Supp. at 771. The Supreme Court, in *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1953), put it this way: "To be deprived not only of present government employment but of future opportunity for it certainly is no small injury when government so dominates the field of opportunity."

 In this case, the New York City Police Department, a municipal governmental entity, will release the fact of Coffran's involuntary psychiatric retirement if he seeks other New York City employment. Moreover, any other Police Department Coffran applies to will also require such information. This action will damage Coffran's reputation in an employment context. The Court finds that Coffran has been deprived of a significant liberty interest in this sense.

Defendants argue that no liberty interest is present in this case, in part because dissemination of the basis of Coffran's retirement has not yet occurred. This Court is not controlled by the Seventh Circuit authority cited by defendants. The authority in this Circuit supports a finding of a liberty interest. Diminishment of future employment opportunity is a loss of liberty. *See Snead*, 355 F.Supp. at 771. The mere fact that the mental incapacity finding has not yet been made public does not defeat a liberty interest claim. *See Laurido*, 489 F.Supp. at 1177 n. 10; *Lenihan*, 636 F.Supp. at 1018–19. In *Lenihan*, a liberty interest was found despite the fact that dissemination of the basis for the retirement had not yet happened—stigma attaches and deprivation of a liberty interest occurs as long as dissemination of this type of information may possibly occur.

Because Coffran was deprived of both liberty and property, he has satisfied the threshold requirement for a due process violation. The question then becomes whether the defendants' procedures, established in accordance with the Administrative Code of the City of New York, comply with the requirements of due process. Coffran demands, among other things, an adversary hearing. Coffran relies on a series of decisions in which the Supreme Court has held that if there is no need for immediate action, due process requires a pre-deprivation hearing. Defendants, on the other hand, believe that due process is satisfied by the series of Medical Board examinations and Trustee reviews held here.

### C. Defendants' Retirement Procedures

Defendants follow procedures established in accordance with the Administrative Code of the City of New York for the consideration of disability retirement applications in cases where the Police Commissioner seeks to retire an officer on mental incapacity grounds. *See* Finke Affirmation, exhibit 3. The Police Commissioner may direct a tenured police officer to appear for examination by the Medical Board, in order to determine whether that officer is mentally capable of performing police work, or whether that officer is mentally incapacitated and should be re-

tired. There are no written standards regarding the factors or criteria to be considered in making such a determination. In accordance with these procedures, the officer has a right of access to his complete medical records, prior to the initial Medical Board examination.

The officer at issue is examined by the Medical Board of three doctors, generally including one psychiatrist. The Medical Board is given the Psychological Services Division file and any materials the officer himself may submit. The examination is not recorded verbatim. The Medical Board determines whether the officer is "mentally incapacitated for the performance of duty and ought to be retired." The Medical Board only recommends retirement if incapacity is established by a preponderance of the evidence. The officer may not be represented or accompanied by either a medical or a legal professional.

The Medical Board may recommend to the Trustees retirement of the officer based on a finding of "mental incapacitation" for police work. The Trustees, as a matter of law, must accept the factual findings of the Medical Board and may not interview the officer. The officer is not allowed to present his case to the Trustees. The officer may submit written evidence to the Trustees concerning his disagreement with the Medical Board's findings. Based on the reported findings, the Trustees must either vote for retirement or remand the matter to the Medical Board for reconsideration. The Trustees may only remand the case if it determines that there are procedural irregularities, the recommendation is not supported by competent evidence, or that new evidence supports reconsideration. The officer is not entitled to a pre or post-deprivation hearing.

Upon a final determination by the Trustees, plaintiff has the right to judicial review via an Article 78 proceeding in which he can argue that the Trustees's decision was arbitrary or capricious, or contrary to law. N.Y.C.P.L.R. §§ 7803, 7804. An Article 78 proceeding does not lie, however, "to challenge the constitutionality of a legislative enactment." *Ames Volkswagen, Ltd. v. State Tax Comm'n*, 47 N.Y.2d 345, 348, 391 N.E.2d 1302, 418 N.Y.S.2d 324 (1979). The appropriate remedy is a declaratory judgment action. *Id.*

### D. Coffran's Suggested Procedures

Coffran argues that these procedures do not provide for the following things: a right to have counsel personally appear on the individual's behalf; a right to have medical professional testify orally on the individual's behalf; a full and fair pre-termination opportunity to rebut the recommendation for an involuntary retirement; adequate notice of the standard for determining mental incapacity for police work; and a verbatim record of the proceeding to ensure fairness and allow for meaningful judicial review. There is no adversary hearing afforded to the officer either before or after retirement. Coffran maintains that the failure to provide these safeguards violates his due process rights.

Coffran refers to the procedures outlined in several comparable New York State statutes to point out the constitutional insufficiency of defendants' procedures. Coffran urges that it is against this background that defendants' procedures must be evaluated. Section 72 of the New York Civil Service Law authorizes involuntary medical leave for psychiatric inability to perform a job, which is comparable to the forced retirement at issue here. Section 72 allows termination of the employee if that employee is not reinstated within one year. Coffran notes that the procedures established in Section 72 were found to be constitutionally inadequate by Judge Weinfeld, in *Snead v. Dept. of Social Services*, 355 F.Supp. 764 (S.D.N.Y. 1973). *See supra* note 1. Judge Weinfeld determined that the procedures set down in section 72 did not comport with a tenured employee's property and liberty interests in continued employment. *Id.* at 773. Ultimately, the procedures in section 72 were amended to parallel those in section 75 to pass constitutional scrutiny. *See Richardson v. County of Suffolk*, 151 Misc.2d 378, 381, 573 N.Y.S.2d 348, 350 (Suffolk Cty.1991). Therefore, Coffran argues that the procedures laid down in New York Civil Service Law section 75, governing "Removal and oth-

er disciplinary action" contain the Constitutionally required procedures.

Section 73 of the New York Civil Service Law allows the termination of an employee who has been absent from the job for over a year and is physically unable to perform the job. The New York Court of Appeals, in *Prue v. Hunt*, 78 N.Y.2d 364, 369, 575 N.Y.S.2d 806, 581 N.E.2d 1052 (1991), has held that, in addition to a post-termination hearing, some pre-termination notice and opportunity to be heard must be accorded as a matter of due process, before an employee can be terminated under section 73.

Section 75 of the New York Civil Service Law governs removal of an employee for misconduct. The procedures required by section 75 include notice of charges, reasonably discovery, the right to representation, a record of the proceedings, and a written determination. Coffran argues that he is entitled to at least these same procedures.

### E. What Process is Due?

While Coffran has admittedly been deprived of significant liberty and property interests, the defendants' procedures may still comport with due process, such that Coffran does not have a claim. According to the rule laid down by the Supreme Court, what constitutes fair process varies from case to case. The Court must weigh 1) the importance of the individual interest involved, 2) the value of specific procedural safeguards to that interest, and 3) the governmental interest in fiscal and administrative efficiency. *See Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Specifically with regard to termination of a tenured public employee, the Supreme Court has laid down procedural requirements: the employee must be given pre-termination notice of the basis for his termination, and should be afforded a pre-termination opportunity to respond to those charges. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985). The employee need not necessarily be given a full, formal hearing before termination. *See id.* at 546, 105 S.Ct. at 1495.

As a general rule, where it is feasible a pre-deprivation hearing should be provided before taking the property, irrespective of the adequacy of post-deprivation remedies. *Zinermon v. Burch*, 494 U.S. 113, 132–33, 110 S.Ct. 975, 987, 108 L.Ed.2d 100 (1990). The duty to provide such a hearing arises when the deprivation is foreseeable, it is possible to conduct a pre-deprivation hearing, and the conduct is authorized by the government. *See id.* at 989–990, 108 S.Ct. at 136–37.

*Lenihan v. New York*, 636 F.Supp. 998 (S.D.N.Y.1985), presented the Court with a problem very similar to the one at issue. In *Lenihan*, a black female police officer was the subject of an involuntary psychiatric retirement survey, just as Coffran was in the instant case. The Court declined to reach the question of whether due process required a full adversarial hearing, because he could decide the case on another basis. *See id.* at 1019. However, the Court noted that a "full adversary hearing might well be required" in a situation such as that one—where a finding of mental illness was made without affording the "subject an 'opportunity to meet the charge by confrontation in an adversary hearing.' " *See id.* at 1018 (*quoting Lombard v. Board of Education*, 502 F.2d 631, 637–38 (2d Cir.1974)).

*Snead v. Dept. of Social Services*, 355 F.Supp. 764, 772 (S.D.N.Y.1983), which analyzed the constitutionality of New York Civil Service Law section 72 procedures, also supplies guidance to this Court. In *Snead*, Judge Weinfeld made the following observations:

> There can be little doubt that the doctor's and appointing authority's ultimate conclusions as to mental fitness are predicated in part upon their judgments concerning the truth or falsity of the charges which prompted the examination. To this extent, the inquiry is factual in the traditional sense, and there is no reason for believing that a psychiatric examination is an appropriate means of resolving such factual disputes. At the interview the employee is placed in a position of having to explain incidents charged by accusers he is not permitted to confront.... He has no op-

portunity to present witnesses who might rebut his accusers or to retain the assistance of counsel in the preparation or presentation of his case. Unless doctors are deemed to possess an omniscience which our legal system refuses to attribute to the most experienced judges, they cannot be expected to make fair and accurate factual determinations under such circumstances. Even to the extent that the ultimate determination of mental fitness depends upon the judgment of a doctor based exclusively on his observations of the employee at the examination, fairness requires that the employee have an opportunity to challenge the doctor's conclusions and present his own medical evidence. Our jurisprudence does not recognize the opinion of any individual expert as infallible; professional judgments concerning mental fitness are just as likely to differ as the observations of layman regarding simple issues of fact. 355 F.Supp. at 772. *See supra* note 1.

■ Applying these principals to the procedures followed by defendants in Coffran's case, Coffran was entitled to greater process than he received. Coffran was deprived of very significant interests when he was retired. Procedural safeguards, particularly a chance to present and argue his position on the correct characterization of events leading to his retirement, were crucial to protecting these liberty and property interests. Even more importantly, there was no overwhelming administrative or fiscal need for the Police Department to retire Coffran without providing him with a hearing. Coffran could easily have remained on restricted duty status pending a hearing regarding his case.

The cases cited by defendants do not persuade this Court otherwise. Defendants urge that *McDarby v. Dinkins*, 907 F.2d 1334 (2d Cir.1990), controls this case and requires a finding that defendants' procedures comport with due process. In *McDarby*, the Court reviewed the same procedures at issue here and held that due process required no more than the Medical Board examination, the Trustees review, and reconsideration if there was new evidence or procedural irregularity. *Id.* at 1337. This Court finds *McDarby* to be quite different than the case at bar, however. In *McDarby*, the issue was whether the plaintiff was entitled to an Accidental Disability Pension or an Ordinary Disability Pension. Under an Accidental Disability Pension, the individual is paid a higher proportion of his previous salary. In either case, McDarby was going to be retired—the property interest solely related to the amount of pension at stake. This Court finds that that monetary interest is entitled to less procedural protection than Coffran's more significant property and liberty interests at stake here.

Defendants also heavily depend on *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979). In *Basciano*, the issue was whether the procedures regarding a post-retirement application for an Accidental Disability Pension comported with the requirements of due process. Again, that case involved solely a monetary, post-retirement interest, far less significant than Coffran's property and liberty interests at stake here.

Defendants urge that due process is afforded in that Coffran can argue his side to the Medical Board in written submissions. This, defendants argue, satisfies the minimal procedural due process requirements. Defendants argue that *Basciano* controls this issue and holds that in a medical determination, written evidence is enough to satisfy due process. *Basciano*, 605 F.2d at 611. This Court reiterates the basic tenet about due process—"[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 609 (*citations omitted*). Under the circumstances of this case, "flexibility" requires more than the City afforded Coffran. As this Court noted earlier, the accidental disability benefits at issue in *Basciano* are not as substantial as the property and liberty interests implicated here by an involuntary psychiatric retirement. Finally, while the "medical determination" made on written evidence may be sufficient for a physical disability, it is not sufficient for the more tenuous determination of a mental disability. This

Court agrees with the opinions expressed in *Lenihan* and *Snead*—a finding of mental incapacity requires more process than was afforded to Coffran in this case.

This Court finds that Coffran's due process rights were violated when he was subjected to an involuntary psychiatric discharge without the opportunity for a pre-deprivation adversary hearing. The procedures utilized by defendants were unconstitutionally applied in Coffran's case. The Court orders the defendants to provide Coffran with process equivalent to that required under the New York Civil Service Law, section 75.

### CONCLUSION

For the reasons expressed above, plaintiff's motion for summary judgment on its complaint is granted. Defendant's cross motion for summary judgment is denied. The Court orders the defendants to provide Coffran with process equivalent to that required under the New York Civil Service Law, section 75. The Court further orders this case closed and directs to clerk to remove it from the active docket.

**SO ORDERED.**