Aaron H. ROSENTHAL, Plaintiff,

v.

**BOARD OF TRUSTEES OF THE NEW YORK CITY POLICE PENSION FUND, Article II, and William Bratton, Commissioner, New York Police Department, Chairman, Defendants.**

**No. 94 Civ. 5118(JES).**

United States District Court, S.D. New York.

March 26, 1998.

---

**25.** 8 C.F.R. § 3.5 (1998).

Kliegerman & Friess, (Rosemary Carroll, of Counsel), New York, NY, for Plaintiff.

Paul A. Crotty, Corporation Counsel of City of New York (C. Finke, A. David, of Counsel), New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiff Aaron H. Rosenthal ("Rosenthal") brings the above-captioned action claiming that defendants Board of Trustees of the New York City Police Pension Fund, Article II ("Board of Trustees") and Police Commissioner William Bratton[1] (collectively "defendants") deprived him of certain retirement benefits in violation of his constitutional right to due process. Pursuant to Fed.R.Civ.P. 56, defendants move for summary judgment, or in the alternative, for abstention and a stay of the instant action pending resolution of Rosenthal's previously filed Article 78 proceeding in New York state court. Rosenthal cross-moves for summary judgment. The sole legal issue before the Court is whether defendants' procedures for determining retirement benefits satisfy due process. For the reasons set forth below, defendants' motion for summary judgment is granted and Rosenthal's cross-motion for summary judgment is denied.

## BACKGROUND

From February 1, 1961, through August 1993, Rosenthal was employed by the New York City Police Department ("N.Y.P.D."),

---

1. Bratton is sued in his capacity as Police Commissioner and Chairman of the Board of Trustees. *See* Complaint ¶ 20. Since Bratton is no longer Police Commissioner nor Chairman of the Board of Trustees, the Court replaces him with Police Commissioner and Chairman of the Board of Trustees William Safir.

working his way up the various ranks from police officer to the esteemed position of Assistant Chief of Police. *See* Complaint ("Compl.") ¶¶ 21–31; *see also* Defendants' Statement Pursuant to Local Civil Rule 3(g) Statement ("Defs.' 3(g) Stmt.") ¶ 1. During that time, Rosenthal became a member of the New York City Police Pension Fund Article II ("Pension Fund"). *See* Plaintiff's 3(g) Statement ("Pl.'s 3(g) Stmt.") ¶ 13. Prior to the incident at issue here, Rosenthal had reported sick for work on only two occasions over the course of thirty years. *See* Defendants' Notice of Motion for Summary Judgment dated January 23, 1995 ("Defs.' Not. Mot.") Exh. 3.

On January 31, 1991, while approaching the Manhattan Municipal Building to attend a late-morning meeting, Rosenthal fell and injured himself. *See* Compl. ¶¶ 32–35; Defs.' 3(g) Stmt. ¶ 2. According to the Line of Duty Report filed by Rosenthal shortly after the incident, poor lighting and construction materials obscured the public entrance to the building, causing him to miss a step and fall face down upon the pavement.[2] *See* Defs.' Not. Mot. Exh. 1 (N.Y.P.D. Line of Duty Injury Report filed on February 4, 1991). As an immediate result of the fall, Rosenthal sustained damage to several teeth and his lips, requiring stitches and extensive dental work, *see id.* Exh. 4 (Letter of Dr. William A. Liebler, M.D., P.C. dated March 15, 1991), and injured his neck, left shoulder, chest and right wrist when his body hit the ground. *Id.* Exh. 2 (Amendment to N.Y.P.D. Line of Duty Report approved February 6, 1991). These injuries were deemed to have been suffered "in the line of duty." *See* Defs.' Not. Mot. Exh. 1. Rosenthal now suffers from disabling advanced degenerative osteoarthritis, degenerative disc disease, and post-traumatic cervical syndrome, *see* Defs.'

Not. Mot. Exh. 11 at 1 (Medical Board Police Pension Fund Article II Report dated January 5, 1994), the aggravation of which Rosenthal attributes to the fall. *See* Compl. ¶¶ 44, 47.

On February 4, 1991, Rosenthal returned to full duty employment status. *See* Defs.' Not. Mot. Exh. 3 (N.Y.P.D. Personnel Update for Duty Availability). However, Rosenthal continued to receive medical treatment and undergo physical therapy for about two years thereafter. *See* Plaintiff's Notice of Cross Motion for Summary Judgment dated March 15, 1995 ("Pl.'s Not. Mot."), Exh. D (Letter to Dr. William A. Liebler, from Park Ave. Radiologists dated March 26, 1993); *see also* Compl. ¶ 39. On June 8, 1993, Rosenthal filed an application for Accidental Disability Retirement ("ADR") benefits.[3] *See* ¶ 40.

*Procedure for Obtaining Disability Benefits*

Pursuant to the terms of the Pension Fund, members who become disabled are eligible to receive one of two types of disability benefits. A member is entitled to receive Ordinary Disability Benefits ("ODR") upon being found permanently disabled by the Medical Board of the Pension Fund ("Medical Board"). *See* N.Y.C. Admin. Code § 13–251. However, if it is further established that a member's permanent disability is a "natural and proximate result of an accidental injury" received in the line of duty and was not a result of the member's "willful negligence," the member is eligible to receive ADR benefits, which are generally more lucrative than ODR benefits. *See* N.Y.C. Admin. Code § 13–252; *see also* Defs.' Not. Mot. Exh. 8 at 1 (Medical Board Police Pension Fund Article II Report dated August 4, 1993).

---

**2.** On the same day as the incident, then civilian Deputy Director of the Support Service Bureau William F. Flynn, who was accompanying Rosenthal to the 11:00 a.m. meeting, confirmed that Rosenthal had "tripped on a step leading to the entrance and fell forward, hitting his face and body to the ground." Defs.' Not. Mot. Exh. 2 at 4 [sic] (N.Y.P.D. Witness Statement of William F. Flynn dated January 31, 1991). Flynn also reported that the lights in the vicinity of the revolving door to the municipal building were "out and the step was not painted to allow identification.

Construction material and water bottles obstructed the passageway and the entire area was poorly lighted, due to canvas drapings." *Id.*

**3.** The Police Commissioner submitted an application to have Rosenthal retired with ordinary disability retirement benefits. *See* Defendants' Memorandum of Law in Support of Summary Judgment dated January 23, 1995 ("Defs.' Mem.") at 5.

A member is first examined by the Medical Board,[4] whose function is to determine whether or not the officer is disabled with respect to performing the duties of his job. A member's application for benefits is then reviewed by the Board of Trustees.[5] Although the Medical Board's finding of disability is binding upon the Board of Trustees pursuant to state law, *see* Defendants' Memorandum of Law in Support of Summary Judgment dated January 23, 1995 ("Defs.' Mem.") at 6, it is the function of the Board of Trustees to determine whether or not the member meets the legal requirements for ADR benefits. *See id.* If not, a member generally receives ODR benefits by default. *See* Defs.' Not. Mot. Exh. 14 at 6 [unnumbered] (Police Pension Fund Articles 1 & 2 Executive Session dated April 13, 1994).

A member has the right to access his complete medical records maintained by the N.Y.P.D. prior to his examination by the Medical Board, as well as access all records that may be reviewed by the Medical Board in reaching its decision. *See* Defs.' Mem. at 6. Furthermore, a member has the right to provide favorable medical records, doctors' reports and other documents to the Medical Board for its consideration. *See id.* Although a member does not have the right to have counsel personally appear before the Medical Board and argue his case, nor does he have the right to have his doctors orally testify before the Medical Board upon his behalf, a member and his attorney are entitled to submit any written arguments to the Medical Board. *See id.* at 7. The Medical Board issues a written report explaining its findings and reasons for rejecting medical opinions or evidence, and renders an opinion on whether the disability is the "natural and proximate result of an accident" in the line of duty. *Id.*

After the Medical Board issues its report, the member and his attorney may submit written comments or arguments directly to the Board of Trustees regarding the correctness of the report. *See* Defs.' Mem. at 7. Neither a member nor his attorney has the right to personally appear before the Board of Trustees. *See id.* Instead, those members of the Board of Trustees representing police labor unions act on behalf of the member and present his case to the Board. *Id.* The Board of Trustees then reviews the supporting evidence and procedural correctness of the Medical Board's opinion. *Id.*

Pursuant to state law, the Board of Trustees' must determine whether the incident that caused the disability meets the legal definition of an "accident" under New York law. *See* Defs.' Mem. at 8. In reaching this decision, the Board of Trustees may consult a memorandum prepared by the New York City Office of Corporation Counsel containing legal definitions of an "accident" in relation to pension benefits as defined by the New York Court of Appeals. *Id.; see also* Defs.' Not. Mot. Exh. 7 at 1 (Memorandum from New York City Office of Corporation Counsel to Board of Trustees dated February 10, 1994) (hereinafter the "Corp. Counsel Memo"). The Corp. Counsel Memo also contains brief synopses of New York Court of Appeals, New York Supreme Court Appellate Division and New York Supreme Court cases in which either a finding of accident or non-accident was rendered or sustained. *See* Defs.' Not. Mot. Exh. 7 at 2–9. A member or his counsel has the right to submit written legal and/or factual arguments to the Board of Trustees regarding the "accident" issue. *See* Defs.' Mem. at 8.

The Board of Trustees may remand an application back to the Medical Board if it finds procedural irregularities, or if the opinion of the Medical Board is unsupported by competent evidence, or if new evidence mer-

---

4. The Medical Board is an independent body that provides a three doctor panel, composed of one physician appointed by the Board of Trustees, one physician appointed by the New York City Commissioner of Health, and one physician appointed by the New York City Director of the Department of Personnel, to determine whether or not a member is disabled. *See* Defs.' Mem. at 6; *see also* N.Y.C. Admin. Code § 13–223.

5. The Board of Trustees is an independent body whose decisions are rendered by vote, six votes being cast by representatives of local New York City government and six votes cast by representatives of police labor unions. *See* N.Y.C. Admin. Code § 13–216; *see also* Defs.' Mem. at 7.

its review and reconsideration by the Medical Board. *See* Defs.' Mem. at 7–8. Each member is granted two remands as of right, and additional remands are available upon agreement of the Board of Trustees. *See id.* at 8. All deliberations by the Board of Trustees' on pension benefit applications are transcribed and verbatim minutes are made available to each member and/or his attorney. *Id.* Once the Board of Trustees renders its final decision, a member has the right to seek judicial review through an Article 78 proceeding brought in New York state court.[6] *See id.* at 8; *see also* N.Y.C.P.L.R. ("CPLR") 7803, 7804 (McKinney 1998). The state court may set aside the Board of Trustees' determination only "if the court [] conclude[s] that the retiree is entitled to the greater benefits as a matter of law" and the Board's findings were arbitrary and capricious. *See Canfora v. Board of Trustees*, 60 N.Y.2d 347, 351–52, 469 N.Y.S.2d 635, 457 N.E.2d 740 (1983).

*Rosenthal's Application for ADR Benefits*

On August 4, 1993, after physically examining Rosenthal, his medical files, and numerous reports from independent and N.Y.P.D.-retained physicians,[7] the Medical Board tentatively determined that Rosenthal was disabled as a result of degenerative cervical spondylosis and cervical stenosis associated with neck pain, as well as symptoms referable to the upper left extremities and range of motion and limitation of Rosenthal's left shoulder. *See* Defs.' Not. Mot. Exh. 8 ¶ 7. In its initial report to the Board of Trustees, the Medical Board noted that the "radiological findings referable to the cervical spine are of

degenerative nature, long standing progressive and pre-existing over the line of duty injury of January 31, 1991." *Id.* However, the Medical Board delayed issuing its final decision pending an examination of medical records from Rosenthal's private, primary care physician. *Id.* On September 29, 1993, the Medical Board issued its final decision, reiterating the aforementioned findings contained in its tentative decision and finding that "Chief Rosenthal is disabled ... due to Osteoarthritis of the Cervical Spine which has been aggravated by the incident of January 31, 1991." *See* Defs.' Not. Mot. Exh. 9 ¶ 5 (Medical Board Police Pension Fund Article II Report dated September 29, 1993). Based upon these findings, the Medical Board recommended that Rosenthal's application for ADR benefits be approved. *See id.*

On November 11, 1993, the Board of Trustees first reviewed Rosenthal's application for ADR benefits. *See* Compl. ¶ 45. After considering the Medical Board's findings contained in its initial and final reports, the Board of Trustees remanded Rosenthal's application for clarification and reevaluation.[8] *See id.* On January 5, 1994, the Medical Board responded by memo to the Board of Trustees, stating, *inter alia*, that an M.R.I. of Rosenthal's cervical spine "was consistent with degenerative disease ... [and] [t]he [Medical] Board is of the opinion that those charges pre-exist the officer's January 31, 1991 line of duty injury as it would be impossible for such extensive degenerative change to develope [sic] in a period of time of one month." *See* Defs.' Not. Mot. Exh. 11 ¶ 1

---

6. On or about June 14, 1994, prior to filing suit in federal court, Rosenthal brought an Article 78 proceeding in state court which is currently on appeal. *See* Defs.' Mem. at 10. Plaintiff has agreed to drop his state law claims in this litigation and to restrict the state court proceeding to his claim of right to a hearing on factual issues related to the Board of Trustees' review of his ADR application. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Summary Judgment for Plaintiff dated March 15, 1995, n. 1.

7. These included the reports of Dr. Magliato, the Orthopedic District Surgeon, Dr. William A. Liebler, Dr. H. Firooznia, Dr. Paul R. Cooper, and

Dr. Ramesh Gidumal. *See* Defs.' Not. Mot. Exh. 8.

8. Specifically, the Board of Trustees requested copies of Rosenthal's primary care physician's medical records and asked for further comment on a clinical report dated February 4, 1991, which found "Advanced Degenerative Osteoarthritis and Degenerative Disc Disease—No definite evidence of trauma," and on the findings of an M.R.I. of Rosenthal's cervical spine taken March 1, 1991, in relation to his injury. *See* Defs.' Not. Mot. Exh. 10 (Memorandum from Joseph F. Maccone, Commanding Officer, Pension Section to Medical Board, Article II dated November 11, 1993).

(Memorandum from Medical Board Police Pension Fund Article II to Board of Trustees Police Pension Fund dated January 5, 1994). The Medical Board reiterated its previous comments that although the extensive findings of the M.R.I. "were not in themselves consequent to the officer's line of duty injury of January 31, 1991, there were no previous symptoms or functional limitations relative to the cervical spine or upper extremities and the line of duty injury of January 31, 1991 aggravated a previous asymptomatic condition such that it has become disabling. Therefore, the [Medical] Board also considered that injury to be the competent causal factor of the officer's injury." *Id.* ¶ 2. Thus, the Medical Board reaffirmed its recommendation that Rosenthal's application for ADR benefits be approved. *See id.*

On February 9, 1994, the Board of Trustees again evaluated Rosenthal's application for ADR benefits. *See* Defs.' Not. Mot. Exh. 12 (Minutes of Police Pension Fund Articles 1 & 2 Public Session dated February 9, 1994). Specifically, the Board of Trustees deliberated on whether Rosenthal's permanent disability was caused by an "accident" within the meaning of N.Y.C. Admin. Code § 13–252 and as defined by New York case law.[9] *See id.* After discussing at length the events surrounding Rosenthal's fall on January 31, 1991, *see id.* Exh. 12 at 4–8 [unnumbered], the Board of Trustees resolved to table his application for ADR benefits and to reconsider the application at the following meeting, which would be attended by Super-

vising Chief Surgeon Dr. Robert Thomas.[10] *Id.* at 34–35.

On March 9, 1994, the Board of Trustees reevaluated Rosenthal's application a third time, once again focusing primarily upon the issue of whether Rosenthal's fall constituted an accident for purposes of receiving ADR benefits. *See* Defs.' Not. Mot. Exh. 13 (Minutes of Police Pension Fund Articles 1 & 2 Executive Session dated March 9, 1994). During the course of deliberations, several board members questioned whether the entrance to the Municipal Building was in fact poorly lit and covered with construction debris on the morning Rosenthal fell. *See id.* at 4–5 [unnumbered]. In light of these questions and because Rosenthal could not personally appear before the Board of Trustees, *see* N.Y.C. Admin.Code § 13–252, Rosenthal's application was tabled and the Board resolved to obtain a transcript of his testimony describing the events surrounding the fall in detail.[11] *See* Defs.' Not. Mot. Exh. 13 at 7–9 [unnumbered].

On April 13, 1994, after deliberating upon Rosenthal's application a fourth time, the Board of Trustees unanimously concluded that his fall did not constitute an "accident." *See* Defs.' Not. Mot. Exh. 14 at 4–7 [unnumbered] (Minutes of Police Pension Fund Articles 1 & 2 Executive Session dated April 13, 1994). Thus, the Board of Trustees denied Rosenthal's application for ADR benefits and he was granted ODR benefits in a tie-vote.

---

**9.** In the context of pension statutes, the New York State Court of Appeals has defined "accident" as a "sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact." *Lichtenstein v. Board of Trustees,* 57 N.Y.2d 1010, 1012, 457 N.Y.S.2d 472, 443 N.E.2d 946 (1982). Recognizing that "not every line of duty injury will result in an award of accident disability," the Court of Appeals has explained that "injuries sustained while performing routine duties but not resulting from unexpected events," are not accidents, while injuries sustained by "precipitating accidental event[s] ... which are not a risk of the work performed ..." are accidents. *See McCambridge v. McGuire,* 62 N.Y.2d 563, 567–68, 479 N.Y.S.2d 171, 468 N.E.2d 9 (1984); *see also* Defs.' Not. Mot. Exh. 7.

**10.** One member of the Board of Trustees, Anthony Coles, opined that Rosenthal's fall did not

meet the definition of an accident since Rosenthal never asserted that the step was defective. *See* Exh. 12 at 4 [unnumbered]. Another Board of Trustee member, Commissioner Joseph Wuensch, recalled that in January of 1991, heavy canvas and scaffolding at the Municipal Building entrance rendered the space "completely dark." *See id.* In light of this, Board of Trustee member Police Officer Thomas Velotti opined that Rosenthal's fall could be classified as "outside ordinary." *See id.* at 5 [unnumbered].

**11.** In April 1991, Rosenthal brought a negligence suit related to the fall in New York state court against the City of New York. *See* Defs.' Not. Mot. Exh. 6 (Transcript of Hearing by City Comptroller's Office, Borough of Manhattan dated June 18, 1991). In connection with that case, the New York City Comptroller's Office examined Rosenthal under oath. *See id.*

**504**

See id. at 7 [unnumbered]. In accordance with mandatory retirement law, Rosenthal retired from the N.Y.P.D. in August of 1993 and began to collect ODR benefits. See Compl. ¶ 19.

*Issue of Law*

Rosenthal does not dispute the findings of the Medical Board nor its procedures employed in reaching its decision. Rather, Rosenthal argues that it is the procedures employed in the second step of the application review process, when the Board of Trustees determines whether or not the incident that caused a member's disability meets the legal definition of an "accident," that violate due process. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Summary Judgment for Plaintiff dated March 15, 1995 ("Pl.'s Mem."), at 14; see also Defs.' Mem. at 13. Thus, Rosenthal argues that he is entitled to an evidentiary hearing on factual issues relating to the cause of his disability as a matter of law. See Pl.'s Mem. at 14, 19–20.

## DISCUSSION

■ To demonstrate a violation of Section 1983, Rosenthal must show that a person or entity, acting under color of state law, deprived him of the rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. See 42 U.S.C. § 1983; see also Rendell–Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Fourteenth Amendment provides that a local or state government employer may not take Rosenthal's property interest in receiving a higher pension without due process of law. See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); McDarby v. Dinkins, 907 F.2d 1334, 1336 (2d

Cir.1990) (citations omitted); Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir.1978). Due process requires notice and an opportunity to be heard. See Mathews v. Eldridge, 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ According to the Supreme Court, this Court must weigh three factors in defining what process was due Rosenthal during the Board of Trustees' deliberations: (1) the importance of the individual interest affected by the official action, (2) the risk of an erroneous deprivation of this interest through the procedures used and the probable value of additional or alternative procedural safeguards, and (3) the government's interest in fiscal and administrative efficiency, and the burden additional or alternative procedures would entail. See Mathews, 424 U.S. at 336.

Rosenthal claims that defendants' procedures violated due process, in that: (1) he was not afforded the opportunity to explain how he incurred his injury, see Compl. ¶ 15; (2) he was denied notice and access to the evidentiary basis upon which the Board of Trustee's rendered its decision denying him ADR benefits, see id. ¶¶ 16, 66; (3) he was not afforded a fair and reasonable proceeding at which the issue of accidental causation could be adjudicated, id.; (4) he was not afforded the opportunity to have a medical doctor or other representative appear with him before the Board of Trustees, id. at ¶ 66; (5) defendants' procedures fail to provide for pre-deprivation and post-deprivation hearings, id. ¶ 17–18; and (6) defendants' failure to keep a verbatim record of the proceedings deprived him of due process.[12] Id. at ¶ 66. Finally, Rosenthal also argues that an Article 78 proceeding in state court is not an adequate post-deprivation remedy. See Pl.'s Mem. at 21–22.

■ Applying the first prong of Mathews, although Rosenthal has a property interest in receiving a higher monetary pension,[13] this interest is far "less compelling than that of an individual denied by government action

---

**12.** Rosenthal seems to have abandoned this claim in his cross-motion for summary judgment and instead argues that the verbatim minutes of the Board of Trustees "deliberations provide no clear explanation of the actual reasons for rejec-

tion of plaintiff's ADR application." See Pl.'s Mem. at 16.

**13.** Rosenthal is entitled to receive an annual ODR benefit of $83,735. See Defs.' Mem. at 17.

'the very means by which to live.'" *Basciano*, 605 F.2d at 609–10 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). Moreover, in cases where a tenured employee that wished to continue working was forced into retirement, so as to involve protected liberty interests as well as property interests, the Supreme Court stated that due process was satisfied when the employee was given pre-termination notice of the reason why he was being terminated and an opportunity to respond. *See Cleveland Board of Ed. v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A formal pre-termination hearing is not necessary to conform with due process. *See id.* at 546; *see also Matter of Hurwitz v. Perales*, 81 N.Y.2d 182, 187, 597 N.Y.S.2d 288, 613 N.E.2d 163 (1993) (opportunity to be heard need not be formal or elaborate).

▮ Under the second prong of *Mathews*, the adequacy of defendants' present procedures and the potential value of additional or alternate procedures "depends largely on the purpose of the inquiry." *Basciano*, 605 F.2d at 610. Here, to establish that a member was entitled to ADR benefits, the Board of Trustees must inquire and determine whether a member's disability resulted from an "accident" as defined by New York law. Clearly, notice is not at issue here since it was Rosenthal who applied for ADR benefits. Therefore, the Court will focus upon Rosenthal's opportunity to be heard.

▮ During the pre-deprivation stage of the proceeding, Rosenthal was entitled to review his N.Y.P.D. medical records prior to being physically examined by the Medical Board and given the opportunity to submit, personally or by counsel, medical records, reports and other favorable documents for the Medical Board's consideration, as well as written arguments in favor of a finding of disability. Furthermore, Rosenthal was thrice given the opportunity to submit writ-

ten responses, either personally or through counsel, to the Board of Trustees during their deliberations on the causal connection of his fall to his disability, as recorded in the verbatim minutes of their meetings. *See supra* at 502–504. Moreover, the record makes clear that the Board of Trustees carefully considered the issue of whether his injury resulted from an accident.[14] *See* Defs.' Exhs. 12–14. Because Rosenthal could only respond to these deliberations in writing does not mean that he was denied due process. As noted by Judge Duffy in an identical case involving the denial of ADR benefits, "[d]ue process does not guarantee an opportunity to be heard in person." *Calzerano v. Board of Trustees of the Police Pension Fund*, 877 F.Supp. 161, 164 (S.D.N.Y.1995) (citing *Basciano*, 605 F.2d at 610).

Likewise, Rosenthal's recommended alternative procedural safeguards argument must be rejected. While the Second Circuit has noted that "questions of credibility and veracity often are best resolved in a trial-type hearing," *Basciano*, 605 F.2d at 610–11, Rosenthal's disagreement is with defendants' legal conclusion that his fall did not fit within the definition of an "accident." Rosenthal has provided no support for his assertion that oral testimony and/or advocacy before the Board of Trustees will assure a more reliable determination than the written responses currently allowed. *See Basciano*, 605 F.2d at 611; *Calzerano*, 877 F.Supp. at 164. Moreover, under the last prong of *Mathews*, New York City has a very substantial interest in avoiding the administrative costs of establishing trial-type hearings when determining the type of pension to which a member is entitled. *Accord Basciano*, 605 F.2d at 611. This is especially true in light of the fact that the Board of Trustees considered an average of 92 pension benefits cases at each of its twelve monthly meetings, totaling 1104 cases in all for the 1994 calendar year. *See* Defs.' Mem. at 8.

14. Specifically, the Board of Trustees focused on Rosenthal's own statements contained in his Line of Duty Report and amendment thereto, *see id.* Exh. 12 at 4–7 [unnumbered], Exh. 13 at 3–4 [unnumbered], his testimony at a hearing held by the Office of Comptroller, *see* Exh. 5–6 [unnumbered], whether or not Rosenthal was familiar

with the area where the fall occurred, *see id.* Exh. 12 at 5–8 [unnumbered], Exh. 13 at 4–6 [unnumbered], Exh. 14 at 4–5 [unnumbered], and whether his disability was, in fact, a pre-existing condition that was merely aggravated by the fall. *See* Exh. 13 at 6, 8–9 [unnumbered].

Finally, the Court finds that an Article 78 proceeding does provide Rosenthal with a meaningful review. Since Rosenthal disagrees with the Board of Trustees' legal conclusion that the facts surrounding his fall do not fit within the definition of an "accident," the state court has the power to set aside the Board of Trustees' decision if it finds the decision to be arbitrary and capricious, and that Rosenthal is entitled to ADR benefits as a matter of law. *See Canfora v. Board of Trustees,* 60 N.Y.2d 347, 351–52, 469 N.Y.S.2d 635, 457 N.E.2d 740 (1983); *see e.g., McCambridge v. McGuire,* 62 N.Y.2d 563, 479 N.Y.S.2d 171, 468 N.E.2d 9 (1984) (reversing Board of Trustees and awarding ADR benefits); *Knight v. McGuire,* 62 N.Y.2d 563, 479 N.Y.S.2d 171, 468 N.E.2d 9 (1984) (same); *Carr v. Ward,* 119 A.D.2d 163, 506 N.Y.S.2d 338 (1st Dep't 1986) (same); *Matter of Mescall v. Board of Trustees,* 204 A.D.2d 643, 612 N.Y.S.2d 624 (2d Dep't 1994) (same); *Matter of Bridgwood v. Board of Trustees,* 204 A.D.2d 629, 612 N.Y.S.2d 621 (2d Dep't 1994) (same).

### CONCLUSIONS

For the reasons set forth above, defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. The Clerk of Court shall enter judgment for defendants and dismiss the action accordingly.

It is **SO ORDERED.**